## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANNE DUFRENE, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF CAREY C. DUFRENE** | **CIVIL ACTION NO: 18-554** |
| | **SECTION "S"** |
| **VERSUS** | **DISTRICT JUDGE HON. MARY ANN VIAL LEMMON** |
| **AMERICAN TUGS, INC.** | **MAGISTRATE  JUDGE HON. DANIEL E. KNOWLES, III** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH AND FOR PROTECTIVE ORDER (R. DOC. 12) AND MOTION TO ADOPT MOTION TO QUASH AND FOR PROTECTIVE ORDER (R. DOC. 15)

Plaintiff, Anne Dufrene, Individually and as the Personal Representative of Carey C. Dufrene, submits this Memorandum in Opposition to Motion to Quash and for Protective Order (R. Doc. 12) and Motion to Adopt Motion to Quash and for Protective Order (R. Doc. 15) and states that Defendant's Motions should be denied because the electronic information requested in the subject subpoenas duces tecum and discovery requests are relevant to this matter, has been narrowly tailored, will not infringe on any privacy rights, is proportional to the needs of the case, will not be burdensome or expensive for the witnesses and Defendant to produce, and Plaintiff has no other reasonable way to obtain the information.

### BACKGROUND

At all relevant times, Defendant, American Tugs, Inc., owned, operated and controlled the tug AMAZING GRACE, a vessel in navigation on navigable waters, and employed her crew.  At all relevant times, Decedent, Carey C. Dufrene, was employed as a Captain by Defendant.  On August 15, 2017, Decedent was working as a Captain aboard the tug AMAZING GRACE in the

Industrial Canal when he purportedly fell down a set of interior stairs on the tug and sustained a significant head injury. Decedent was purportedly found in an unconscious state by Autry Dufrene, one of the tug's deckhands, or Stephen Gros, the tug's other captain. Jerry LeBlue, another deckhand, was also on the tug at the time of the casualty. Decedent was purportedly revived and placed in bed. Later the same day, Decedent was found unconscious and unresponsive in his bed. Sometime thereafter, 911 was called. New Orleans Police Department and EMS arrived on the scene, but despite their efforts, Decedent could not be resuscitated and was pronounced dead. An autopsy and toxicology screen were performed on Decedent and revealed the presence of drugs in Decedent's system.

"Autry Dufrene, Sr. is the president and owner of American Tugs, a small family owned business, and Autry Dufrene, Jr., is his son (and brother of the decedent, Carey Dufrene) and an employee of the company." (Defendant's Memorandum in Support of Motion to Quash and for Protective Order, R. Doc. 12-1, pp. 8-9.) "[Stephen] Gros is a former employee of American Tugs who still performs occasional trip work for the company." (Defendant's Motion to Adopt Motion to Quash and for Protective Order, R. Doc. 15, p. 1.)

Plaintiff served subpoenas duces tecum on Autry Dufrene, Jr. and Autry Dufrene Sr. on July 18, 2018 and on Stephen Gros on August 5, 2018, requesting the following as to each:

### Exhibit A

(1) Produce the personal cell phone of Stephen Gros, Jr. for the purposes of extracting and/or retrieving all cell phone information and data for the time period of June 15, 2017 through the present. Upon extraction and retrieval of all cell phone information and data, it is requested that the following cell phone information and data be produced:

    (a) all cell phone information and data for the time period of June 15, 2017 through October 15, 2017 be produced in their entirety;

(b) all cell phone information and data for the time period of October 16, 2017 through the present related to the following:

    (i) the tug AMAZING GRACE;

    (ii) the events, equipment and/or persons involved in the casualty that is the subject of the instant lawsuit;

    (iii) the use, acquisition, and/or distribution of any and all medications and/or drugs by/to any and all persons involved in the casualty that is the subject of the instant lawsuit; and

    (iv) drug testing of and/or decision making regarding drug testing/not drug testing crew members prior to and after the casualty that is the subject of the instant lawsuit.

(2) Produce all emails related to the following:

    (a) the tug AMAZING GRACE;

    (b) the events, equipment and/or persons involved in the casualty that is the subject of the instant lawsuit;

    (c) the use, acquisition, and/or distribution of any and all medications and/or drugs by/to any and all persons involved in the casualty that is the subject of the instant lawsuit; and

    (d) drug testing of and/or decision making regarding drug testing/not drug testing crew members prior to and after the casualty that is the subject of the instant lawsuit.

(Subpoena Duces Tecum to Autry Dufrene Sr., attached hereto as Exhibit A; Subpoena Duces Tecum to Autry Dufrene Jr., attached hereto as Exhibit B; Subpoena Duces Tecum to Stephen Gros, attached hereto as Exhibit C.)

Plaintiff also propounded a Second Set of Requests for Production of Documents to Defendant on July 18, 2018, requesting similar electronic information from Defendant as follows:

**REQUEST NO. 35:**

Produce the boat phone that was on the tug AMAZING GRACE on the date of Carey Dufrene's casualty for the purposes of extracting and/or retrieving all cell phone information and data for the time period of June 15, 2017 through the

present.  Upon extraction and retrieval of all cell phone information and data, it is requested that the following cell phone information and data be produced:

(a) all cell phone information and data for the time period of June 15, 2017 through October 15, 2017 be produced in their entirety;

(b) all cell phone information and data for the time period of October 16, 2017 through the present related to the following:

(i) the events, equipment and/or persons involved in the casualty that is the subject of the instant lawsuit;

(ii) the use, acquisition, and/or distribution of any and all medications and/or drugs by/to any and all persons involved in the casualty that is the subject of the instant lawsuit; and

(iii) drug testing of and/or decision making regarding drug testing/not drug testing crew members prior to and after the casualty that is the subject of the instant lawsuit.

**REQUEST NO. 36:**

Produce all company related or controlled cell phones that may contain information and/or data related to Carey C. Dufrene's casualty for the purposes of extracting and/or retrieving all cell phone information and data for the time period of June 15, 2017 through the present.  Upon extraction and retrieval of all cell phone information and data, it is requested that the following cell phone information and data be produced:

(a) all cell phone information and data for the time period of June 15, 2017 through October 15, 2017 be produced in their entirety;

(b) all cell phone information and data for the time period of October 16, 2017 through the present related to the following:

(i) the events, equipment and/or persons involved in the casualty that is the subject of the instant lawsuit;

(ii) the use, acquisition, and/or distribution of any and all medications and/or drugs by/to any and all persons involved in the casualty that is the subject of the instant lawsuit; and

(iii) drug testing of and/or decision making regarding drug testing/not drug testing crew members prior to and after the casualty that is the subject of the instant lawsuit.

**REQUEST NO. 37:**

Produce all voicemails, phone messages, text messages, emails, electronic notes or electronic files of any kind related to the following:

(a) the events, equipment and/or persons involved in the casualty that is the subject of the instant lawsuit;

(b) the use, acquisition, and/or distribution of any and all medications and/or drugs by/to any and all persons involved in the casualty that is the subject of the instant lawsuit; and

(c) drug testing of and/or decision making regarding drug testing/not drug testing crew members prior to and after the casualty that is the subject of the instant lawsuit.

(See Plaintiff's Second Set of Requests for Production of Documents to Defendant, attached hereto as Exhibit D.)

Following service of the subpoenas duces tecum and supplemental discovery requests, defense counsel contacted undersigned Plaintiff's counsel to discuss the scope of the electronic information sought.  Plaintiff's counsel provided additional information to defense counsel regarding how the electronic information could be obtained from the cell phones and what electronic information Plaintiff was trying to obtain.  Plaintiff's counsel advised defense counsel that she was amenable to trying to come to an agreement with defense counsel regarding the scope of the electronic information sought and undersigned counsel discussed the possibility of limiting the information requested to certain search terms and having a forensic electronic evidence retrieval expert perform the search.  Plaintiff's counsel also advised defense counsel that the time to download the cell phone information would be no longer than a few hours.  However, defense counsel did not offer any suggestions in response.

Plaintiff is seeking essentially three categories of cell phone and electronic information. First, drug activity and drug use by Defendant's employees is one of the issues in this case, as

multiple opioid drug intoxication was concluded to be a cause of Decedent's death. When Defendant used these drugs, who knew Defendant was using these drugs, and whether any other employees were using drugs are important to Plaintiff's claims against Defendant for negligence and unseaworthiness. This information will provide evidence of a drug culture, that this drug culture was known by Defendant and it did nothing to prevent it, that there was a plan to coverup known drug use by Defendant's employees and delay or not order the crew to take drug tests following the casualty, and that the crewmembers and Defendant had an opportunity to discuss the actual facts of the casualty and devise a narrative of the casualty.

Second and similar to the first category discussed above, information related to drug testing of and/or decision making regarding drug testing/not drug testing crew members who were on board the tug at the time of the casualty is relevant to whether any other employees were using or suspected of using drugs while on board the tug, and which information is important to Plaintiff's claims against Defendant for negligence and unseaworthiness for the reasons stated in the preceding paragraph. Coast Guard regulations require alcohol and drug tests on crewmembers involved in a casualty; Defendant did not test the crew of the tug AMAZING GRACE for drugs or alcohol within the time period required for doing so following a serious marine accident. See 46 CFR 4.03 and 4.06. Pursuant to 46 CFR 4.06-3, a drug test must be conducted on each individual within 32 hours of a serious marine accident and an alcohol test must be conducted on each individual within 2 hours of a serious marine accident.[1] Dufrene, Jr. was drug tested on August 31, 2017, pursuant to a purported random drug test, that is 16 days following the casualty. (See Dufrene, Jr. drug test, attached hereto as Exhibit E.) Gros was drug and alcohol tested on September 1, 2017, that is 17 days following the casualty. (See Gros drug test, attached hereto as

---

[1] Plaintiff has not been provided with any of Defendant's company policies, so it is not known whether Defendant has a company drug testing policy.

Exhibit F.)  LeBlue was drug tested on September 5, 2017, pursuant to a purported random drug test, that is 21 days following the casualty.  (See LeBlue drug test, attached hereto as Exhibit G.) Plaintiff is entitled to know why such drug tests were not timely performed as required by law and if any communications were made regarding the same because such information will reveal whether Defendant intended to coverup known drug activity by its employees.

Third, information related to the events, equipment and/or persons involved in the casualty on board the tug AMAZING GRACE is not only relevant to this matter but is crucial discoverable information regarding the facts of Decedent's casualty and will reveal the circumstances of the casualty and whether and when the crew communicated with each other, Defendant, or anyone else about the circumstances and had an opportunity to devise a narrative of the casualty. Communications to, from, by and between Dufrene, Sr., Dufrene, Jr., Gros, LeBlue and anyone else regarding the casualty facts or events surrounding same are clearly of consequence and material to Plaintiff's claims.  Moreover, the fact that the victim is not available to provide any information regarding these events makes the need for the exchanges of information to, from, by and between these witnesses regarding the casualty even more critical.

Plaintiff suggests obtaining the requested information from the cell phones through the following procedure:  (1) Retain forensic electronic evidence retrieval expert Johnette Hassell to extract and/or retrieve and download all cell phone information and data for the time period of June 15, 2017 through the present from the cell phones.  (2)  The requested cell phones will be provided to Ms. Hassell and a chain of custody form will be maintained for each cell phone.  Ms, Hassell has advised that it could take 30 minutes up to three hours to download data from a cell phone, depending on how much information is stored on it.  Once the download is complete, the cell phones will be provided back to their owners.  (3) Plaintiff and Defendant will discuss and

agree upon a list of search terms to be used to identify relevant information in the downloaded material.  (4) Ms. Hassell will perform a search for any information related to the agreed upon search terms.  (5) Ms. Hassell will perform a search for all incoming and outgoing calls on the date of the casualty.  (6) Ms. Hassell will prepare a report containing all the information related to the agreed upon search terms and a call log.  (7) Ms. Hassell will provide her report to defense counsel for review, so that he can review the information for relevance and to assert any privileges.  (8) Defendant will produce Ms. Hassell's report to Plaintiff, subject to any objections and a privilege log.  (9) Ms. Hassell will sign a non-disclosure/confidentiality agreement.  (10) Plaintiff will bear the costs of Ms. Hassell's services.

## LAW AND ARGUMENT

Fed. R. Civ. P. 26(b)(1) provides in pertinent part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 34(a) allows a party to serve on any other party a request within the scope of Rule 26 to produce and permit the requesting party to inspect, copy, test, or sample items in the responding party's possession, custody, or control, including items such as electronically stored information, stored in any medium from which information can be obtained.  Fed. R. Civ. P. 34(c) and Fed. R. Civ. P. 45 also allow a party to serve a subpoena to produce electronically stored information on a nonparty.

> As with any other form of discovery, issues of burden and
> intrusiveness raised by requests to test or sample can be addressed
> under Rules 26(b)(2) and 26(c). Inspection or testing of certain types
> of electronically stored information or of a responding party's
> electronic information system may raise issues of confidentiality or
> privacy. The addition of testing and sampling to Rule 34(a) with
> regard to documents and electronically stored information is not
> meant to create a routine right of direct access to a party's electronic
> information system, although such access might be justified in some
> circumstances. Courts should guard against undue intrusiveness
> resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34, Advisory Committee Notes, 2006 Amendment.

"A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). On motion for a protective order, the party from whom discovery is sought has the burden of showing that the information is not reasonably accessible because of undue burden or cost. Id. The court must limit the frequency or extent of discovery otherwise allowed by the federal rule if it determines that:

> (1) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;
>
> (2) the party seeking discovery has had ample opportunity to obtain
> the information by discovery in the action; or
>
> (3) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

A party from whom discovery is sought may also move for a protective order and a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Similarly, a non-party can file a

motion to quash or modify a subpoena on the grounds that it requires disclosure of privilege or other protected matter or subjects the person to undue burden.  Fed. R. Civ. P. 45(d)(3).

Defendant has not argued that the requested electronic information is privileged or irrelevant.  Rather the requested information clearly is relevant and discoverable as it relates to drug activity of Defendant's employees, post-accident drug testing, and the facts and circumstances of the casualty.  This information is relevant because it will reveal evidence of a drug culture at American Tugs and that this drug culture was known by Defendant; that there was a coverup of drug activity by the crewmembers on the tug and by Defendant; that the crewmembers were using drugs on the day of the casualty; that there were discussions about whether to obtain drug tests on the crewmembers but which drug tests were delayed as a way to coverup known or suspected drug activity by crewmembers; and that the crew of the tug communicated with each other, Defendant, and others about the casualty and had an opportunity to develop a narrative of the casualty.  This evidence will support Plaintiff's claims that Defendant failed to provide a safe place to work, failed to provide competent crewmembers to perform vessel functions, failed to exercise managerial control of the vessel operations, failed to exercise due care and caution under the then existing circumstances, failed to call 911 or evacuate Decedent when he was initially discovered with a head injury, and other acts of negligence and unseaworthy conditions.

Plaintiff's request is proportional to the needs of the case as the information sought is central to Plaintiff's claims, and Plaintiff does not have the opportunity of any firsthand knowledge of the events related to the casualty, given that Decedent cannot provide his own account. Moreover, because Defendant has withheld from disclosure essentially all substantive documents it has related to this matter, except for the Coast Guard report of marine casualty, Plaintiff has no other reasonable means to obtain the requested information.  (See Plaintiff's Motion to Compel

Defendant to Respond to Discovery, R. Doc. 18.)  In fact, "courts have permitted restrained and orderly computer forensic examinations where the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means."  NOLA Spice Designs, LLC v. Haydel Enterprises, Inc., 2013 WL 3974535, *3 (E.D. La. 2013) (citations omitted).

Plaintiff also has narrowly tailored the information she is seeking and will not have any access to any of the witnesses' personal information or Defendant's proprietary information, as shown in the subpoenas, discovery requests, and as outlined above because the information produced will be confined and related to certain search terms and subject to defense counsel's review.  As such, no privacy concerns are raised.  The witnesses and Defendant will not incur any expenses related to Ms. Hassell's retrieval of information because Plaintiff agrees to pay for her services.   The witnesses and Defendant will not be burdened by providing the requested information because all they have to do is hand over the requested cell phones to Ms. Hassell, and same will be returned to them within a few hours at worse.

Plaintiff has clearly shown why a forensic analysis of the requested cell phones and the requested electronic information is warranted under the circumstances of this case.  Plaintiff's request also is limited in time and scope, and Plaintiff has addressed all privacy, expense and burden concerns.  The Court should, therefore, deny Defendant's Motions.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions should be denied because Plaintiff has shown it is justified in obtaining the requested electronic information under the circumstances.

Respectfully submitted,

*/s/ Beth E. Abramson*
BETH E. ABRAMSON (#27350)
DAVID A. ABRAMSON (#21435)
Lewis, Kullman, Sterbcow & Abramson, LLC
601 Poydras Street, Suite 2615
New Orleans, Louisiana 70130
Telephone: (504) 588-1500
Fax: (504) 588-1514
babramson@lksalaw.com
abramson@lksalaw.com
COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 10th day of August, 2018 filed and served the above

described pleading on all parties through the CM/ECF system.

*/s/ Beth E. Abramson*