# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANNE DUFRENE                                          CIVIL ACTION

VERSUS                                               NO. 18-554

AMERICAN TUGS, INC.                                  SECTION "S" (3)

## ORDER

Before the Court are the Motion to Quash and for Protective Order [Doc. #12], the Motion to Compel Production of Recorded Phone Calls [Doc. #13], and Plaintiff's Motion to Compel Defendant to Respond to Discovery. [Doc. #18]. The parties argued the first two motions at an oral hearing, and the Court took the third under advisement with the first two motions after the oral hearing. Having reviewed the pleadings and the case law, the Court rules as follows.

## I.      Background

Defendant American Tugs, Inc. ("defendant" or "American Tugs") owned, operated, and controlled the tug AMAZING GRACE, a vessel in navigation on navigable waters, and employed her crew. Decedent, Carey C. Dufrene, was employed as a Captain by defendant. On August 15, 2017, decedent was working as a Captain aboard the tug AMAZING GRACE in the Industrial Canal when he allegedly fell down a set of interior stairs on the tug and sustained a significant head injury. Decedent was allegedly found in an unconscious state by Autry Dufrene, one of the tug's deckhands, or Stephen Gros, the tug's other captain. Jerry LeBlue, another deckhand, was also on the tug at the time of the casualty. Decedent was revived and placed in bed. Later the same day, decedent was found unconscious and unresponsive in his bed. Sometime thereafter, someone called 911. The New Orleans Police Department and EMS arrived on the scene, but despite their

efforts, decedent could not be resuscitated and was pronounced dead. An autopsy and toxicology screen were performed on decedent and revealed the presence of drugs in decedent's system.[1]

Plaintiff thus sues defendants, American Tugs, Belle Chasse Dry Dock L.L.C., and Travelers Property Casualty Company[2] for compensatory damages in an amount reasonable under the circumstances of this cause, for decedent's pre-terminal pain and suffering and mental anguish, plaintiff's past, present and future mental pain, suffering, and anguish, loss of consortium and society, loss of financial support and services, loss of nurture and guidance, funeral and burial expenses, for punitive damages and reasonable attorney's fees for the unreasonable, arbitrary and capricious failure to provide cure, for legal interest on those amounts for which plaintiff is entitled to obtain legal interest, costs, and for any additional general and equitable relief as the facts of this lawsuit permits.

## II.     The Motion to Quash and for Protective Order

On July 18, 2018, plaintiff issued two subpoenas duces tecum, one to Autry Dufrene, Sr. and one to Autry Dufrene, Jr. Autry Dufrene, Sr. (the father of decedent) is the president and owner of American Tugs, a small family-owned business, and Autry Dufrene, Jr., is his son (and brother of decedent) and an employee of the company. The subpoenas seek the production of the Dufrenes' personal cell phones to extract all cell phone information and data from June 2017 through the present. The subpoenas also require that once this "more than a year's worth" of "cell

---

[1] The autopsy allegedly reveals that decedent died from a drug overdose, not that he simply had drugs in his system.

[2] Plaintiff added the last two defendants through her second amended complaint [Doc. #31] and after the parties filed the instant motions. Only American Tugs is involved in these three motions.

phone information and data" has been extracted and/or retrieved, (1) all "cell phone information and data" from June 15, 2017 through October 15, 2017 (a period of four months) and (2) all "cell phone information and data" from October 16, 2017 to the present (a period of ten months) must be produced. Counsel for plaintiff advised that she has an expert who would take possession of the individuals' and company's phones and would retrieve and/or extract essentially all "cell phone information and data" from the phones. On the same day, plaintiff propounded requests for production that seek the same information as the subpoenas, and, in addition, similar information from the boat phone and any company-controlled or company-related cell phones.

Defendant raises several arguments in opposition to the subpoenas and asks the Court to quash them and to issue a protective order. Defendant first argues that it has standing to bring this motion because the Dufrenes own and work for it. Defendant next raises the subject of the privacy interests implicated by the subpoenas. Defendant notes that the subpoenas seek production of ALL "cell phone information and data" and that such a broad request will invariably invade the privacy of the Dufrenes. Citing case law, it notes that cell phones today have very large capacities to store information that is used by individuals daily, including medical, financial, and other personal information. It maintains that allowing such an intrusion into these men's personal privacy should not be permitted without some showing of necessity or further explanation from plaintiff.

Defendant also contends that the subpoenas are vague and overbroad because they give plaintiff's expert complete and exclusive control of these several phones and the ability to snoop through all texts, emails, and other recorded data to essentially "fish" for possible communications that purportedly relate to discussions about drugs (presumably including any possible references

to both legal and illicit drugs). Citing the Advisory Committee's notes, defendant maintains that the addition of provisions on testing and sampling electronically-stored information did not create a routine right of direct access to such information, and courts should guard against undue intrusiveness resulting from such inspecting or testing.

Defendant argues that there is no indication that plaintiff has attempted to discover the information through less intrusive means and that it might be possible for her to discover the information through the propounded discovery requests. Defendant seeks a protective order with respect to these requests consistent with its request to quash the subpoenas that requires more specific protocols and parameters so that all interested parties are clear on what can permissibly be requested, how it will be extracted or retrieved, and how it will be produced to plaintiff.

For her part, plaintiff maintains that she seeks two types of documents related to drug use and activity and one type related to the events that occurred surrounding decedent's death. She maintains that this information is relevant because it will reveal evidence of a drug culture at American Tugs and that this drug culture was known by defendant; that there was a cover-up of drug activity by the crewmembers on the tug and by defendant; that the crewmembers were using drugs on the day of the casualty; that there were discussions about whether to obtain drug tests on the crewmembers but which drug tests were delayed as a way to cover-up known or suspected drug activity by crewmembers; and that the crew of the tug communicated with each other, defendant, and others about the casualty and had an opportunity to develop a narrative of the casualty. She argues that this evidence will support her claims that defendant failed to provide a safe place to work, failed to provide competent crewmembers to perform vessel functions, failed

to exercise managerial control of the vessel operations, failed to exercise due care and caution under the then existing circumstances, failed to call 911 or to evacuate decedent when he was initially discovered with a head injury, and other acts of negligence and unseaworthy conditions.

She proposes the following protocol: (1) Retain forensic electronic evidence retrieval expert Johnette Hassell to extract and/or to retrieve and download all cell phone information and data for the period of June 15, 2017 through the present from the cell phones. (2) The requested cell phones will be provided to Hassell and a chain of custody form will be maintained for each cell phone. Hassell has advised that it could take from 30 minutes up to three hours to download data from a cell phone, depending on how much information is stored on it. Once the download is complete, the cell phones will be provided back to their owners. (3) Plaintiff and defendant will discuss and agree upon a list of search terms to be used to identify relevant information in the downloaded material. (4) Hassell will perform a search for any information related to the agreed upon search terms. (5) Hassell will perform a search for all incoming and outgoing calls on the date of the casualty. (6) Hassell will prepare a report containing all the information related to the agreed upon search terms and a call log. (7) Hassell will provide her report to defense counsel for review, so that he can review the information for relevance and to assert any privileges. (8) Defendant will produce Hassell's report to plaintiff, subject to any objections and a privilege log. (9) Hassell will sign a non-disclosure/confidentiality agreement. (10) Plaintiff will bear the costs of Hassell's services.

Plaintiff maintains that she cannot obtain this information from another source because decedent is dead, and defendant has withheld almost every document related to this accident except

the Coast Guard report. She contends that because she has narrowly tailored the requests, no privacy interests are implicated.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. "The party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

As to the discovery of electronically stored information, Rule 34(a) provides that, "A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample any . . . electronically stored information . . .." Fed. R. Civ. P. 34(a)(1). "This right to information, however, is counterbalanced by a responding party's confidentiality or privacy interests. A party is therefore not entitled to a routine right of direct access to a party's electronic information system, although such access may be justified in some circumstances." *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 446 (D. Conn. 2010) (citing Notes of Advisory Committee on 2006 Amendments; internal quotations omitted).

The implication of the individual parties' privacy interests in the data stored on their cell phones persuades the Court to deny plaintiff's motion in part at this time. This conclusion is reinforced by the recent Supreme Court ruling in *Riley v. California*, 134 S. Ct. 2473 (2014), which recognized, albeit in the criminal context, the privacy concerns implicated by the modern cell phone. As the Court noted, the modern cell phone's immense storage capacity "has several

interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information – an address, a note, a prescription, a bank statement, a video – that reveal much more in combination than any isolated record. Second, the phone's capacity allows even just one type of information to convey far more than previously possible." *Id.* at 2489. The Supreme Court further recognized that "[a]lthough the data stored on a cell phone is distinguished from physical records by quantity alone, certain types of data are also qualitatively different." *Id.* at 2490. In this regard, the Supreme Court points to an internet search and browsing history that may reveal an individual's private interests and concerns, such as "symptoms of disease, coupled with frequent visits to WebMD." *Id.* Indeed, this is precisely the information that may be implicated by plaintiffs' search of the individual defendants' cell phones and with which the Court takes issue.

The subpoenas and requests for production are – in part – not proportional to the needs of the case. Allowing the production of "all cell phone information and data" for a specific time period implicate the privacy interests of the Dufrenes and will reveal a plethora of irrelevant and potentially highly personal information. *See Tingle v. Hebert*, Civ. A. No. 15-626, 2017 WL 2536584, at *4-5 (M.D. La. June 8, 2017). Accordingly, regarding the two "Exhibit As" attached to the subpoenas, the Court strikes subsection (a) under each request as overbroad and not proportional to the needs of this lawsuit. The other requests in the subpoenas – which address decedent, the event, incidents of drug testing, etc. – may reveal relevant information, however, since they are narrowly tailored to the needs of this lawsuit and the underlying incident. Similarly, and for the same reasons, with respect to Request for Production ("RFP") Nos. 35 and 36, the Court strikes subsection (a) as well as they are identical to subsections (a) in the two subpoenas.

Regarding the rest of the requests in the subpoenas and the second set of RFPs, defendant shall respond **no later than fourteen (14) days from the date of this Order**. However, the Court finds plaintiff's method tedious, time-consuming, and potentially expensive. Thus, ***defendant*** shall cull the appropriate cell phones, email accounts, and the like for responsive information and produce said information after reviewing it for privilege. To the extent that defendant withholds any responsive information on the ground of privilege, defendant shall simultaneously produce an appropriate privilege log. The Court is convinced that defendant and its counsel are well aware of the sanctions that may be imposed should responsive information be withheld.

### III.   Motion to Compel Production of Recorded Phone Calls

This motion seeks to compel plaintiff to produce recordings in her possession, or accessible to her, of phone conversations that a non-party witness, Jordan Dufrene, surreptitiously made while speaking with unsuspecting employees of defendant and/or co-workers of decedent, the contents of which are purportedly germane to issues in this litigation. Plaintiff disclosed that she has possession of phone recordings between Jordan Dufrene, who is the surviving daughter of Carey Dufrene, and (1) Autry Dufrene, Jr. from August 18, 2017; (2) Harold (Tom) Mitchell from August 26, 2017; and (3) Stephen Gros from September 12, 2017. Jordan Dufrene, not a party to this litigation, called these individuals and, without their consent or knowledge, recorded their conversations. Plaintiff plans to use these recordings at trial.

Counsel for defendant has spoken to two of the persons, Stephen Gros and Autry Dufrene. Jr., whose conversations were recorded by Jordan Dufrene and can represent that they want copies of these recordings before they are deposed. Their depositions are currently scheduled for August

15 and 22, 2018, respectively.[3] Defendant argues that plaintiff cannot hold onto the recordings of phone conversations between non-party Jordan Dufrene and critical fact witnesses and employees of American Tugs to the exclusion American Tugs or the witnesses themselves. Under the circumstance through which these recordings were obtained, combined with the fact that two of the witnesses so far have expressed a desire for copies of the recordings, plaintiff cannot demonstrate good cause or any justifiable reason to unilaterally withhold the recordings. Lastly, defendant seeks its fees and costs.

In her opposition, plaintiff admits the underlying factual allegations but argues that the documents are protected by the attorney-client and/or work-product privileges, and she maintains that defendant has not shown and cannot show that it has a substantial need for these materials to prepare its case and that it cannot obtain their substantial equivalent without undue hardship. She notes that defendant has control of witnesses Gros and Dufrene as they are still employees of defendant, and defendant can readily talk to them about the facts and circumstances of decedent's casualty and death and their conversations with Jordan Dufrene.

She also notes that defendant also has in its possession and has refused to produce to plaintiff the prior witness statements of Gros, Dufrene, and LeBlue that were obtained by defendant shortly after the casualty. Plaintiff submits that if the Court orders her to produce the phone recordings on the basis that they are not privileged or are excepted from privilege, then the

---

[3] It is not clear that these depositions proceeded as scheduled given that the District Court has only recently signed an amended scheduling order. [Doc. #50].

Court should also order defendant to produce its witness statements of Gros, Dufrene and LeBlue for the same reasons.[4]

She maintains that the Gros, Dufrene, and Mitchell recordings discuss information related to activities that were going on at and/or around the time of decedent's casualty, which activity contradicts information contained in the police and coroner's reports of the casualty and contradicts information provided by defendant in its discovery responses. She argues that such contradictions and/or inconsistencies are evidence of untruthfulness.

Citing case law, she contends that the Court has considerable discretion in allowing her to withhold the recordings for good cause until after the depositions of the witnesses even if it is a prior statement. She argues that delaying production of the phone recordings until after the witnesses' depositions would serve the interests of justice because it would enable her to use the recordings for impeachment purposes and to uncover inconsistencies and evidence of untruthfulness. She is willing to turn over the tapes after the depositions or to the Court for *in camera* review, which she has done.

"While statements of a party obtained by the opposing party might be considered work product, the second paragraph of Rule 26(b)(3) creates an exception to the protection generally provided for work-product material and gives a party an affirmative right to production of his own statements." *Miles v. M/V Miss. Queen*, 753 F.2d 1349, 1351 (5th Cir. 1985). This provision was added to Rule 26 through the 1970 amendments and made a party's statement "discoverable as of right." *Id.* (quoting 8 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, §

---

[4] Because no formal motion has been filed as to this relief, the Court will not address it.

2027 at 238). The Fifth Circuit has explained that Rule 26(b)(3)(C) is "mandatory, not discretionary." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, – F.R.D. –, 2017 WL 896897, at *16 (N.D. Tex. Mar. 7, 2017) (quoting *Miles*, at 1351); *see also Mayfield v. DeSoto Par. Police Jury*, Civ. A. No. 15-2374, 2017 WL 4019437, at *2 (W.D. La. Sept. 12, 2017).

Further, even if Rule 26(b)(3)(C) was not an exception to the work product doctrine, federal courts in this state have held that the recording of conversations without the other party's knowledge vitiated any claimed privilege or immunity. *See Pfeifer v. State Farm Ins. Co.*, Civ. A. No. 96-1895, 1997 WL 276085, at *3 (E.D. La. May 22, 1997) ("Pfeifer's conduct in surreptitiously taping conversations in which he deliberately engaged unsuspecting coworkers vitiates the qualified protection of Rule 26(b)(3)."); *Williams v. Gunderson Rail Servs., L.L.C.*, No. 07-0887, 2008 WL 145251, at *3 (W.D. La. Jan. 14, 2008) ("clandestine, unconsented recording of the conversations vitiated the work product privilege. Thus, the tapes are discoverable."); *Griffin v. Javeler Marine Servs., L.L.C.*, No. 15-106, 2016 WL 1559170, at *2 (W.D. La. Apr. 18, 2016) (holding that Griffin's act of secretly recording the conversations he had with defendants . . . vitiates any otherwise applicable work-product protection afforded the interviews.); *Mayfield*, 2017 WL 4019437, at *2.

The Court finds that plaintiff has waived any claim of privilege here. Jordan is neither an attorney nor was she acting on the advice of counsel when she surreptitiously recorded the conversations. Neither would that matter. Because Jordan recorded them without the knowledge of the other party, any privilege is waived. This holding is in line with virtually all cases dealing with this issue that have held that clandestine recordings of conversations with potential fact

witnesses, *whether made by a party or by counsel, before or after counsel is consulted*, are not shielded under the work product doctrine. *See Smith v. WNA Carthage, L.L.C.*, 200 F.R.D. 576, 578 (E.D. Tex. 2001); *Otto v. Box USA Group, Inc.*, 177 F.R.D. 698, 701 (N.D. Ga. 1997); *Sea-Roy Corp. v. Sunbelt Equip. & Rentals, Inc.*, 172 F.R.D. 179, 183 (M.D.N.C.1997); *Robertson v. Nat'l R.R. Passenger Corp.*, No. Civ. A. 98-1397, 1999 WL 199093, *2 (E.D. La. Apr. 8, 1999); *Pfeifer v. State Farm Ins. Co.*, No. Civ. A. 96-1895, 1997 WL 276085, *2 (E.D. La. May 22, 1997); *Giladi v. Albert Einstein Coll. of Medicine*, No. 97 Civ. 9805(DC), 1998 WL 183874, *1 (S.D.N.Y. Apr. 15, 1998).

That issue resolved, the issue now is one of timing given that plaintiff has agreed to produce the calls but seeks to hold the depositions of the recorded parties before producing the conversations to defendant. Plaintiff argues that, even if the Court compels her to produce the tapes, she should be permitted to produce them after the depositions of the taped witnesses in order to use them for impeachment purposes. Because of the reasons already outlined and because plaintiff has adduced no convincing evidence that compels this Court to deviate from the general rule of liberal pre-trial discovery, she must produce the tapes prior to the depositions of the taped witnesses. *See Smith*, 200 F.R.D. at 579 (ordering production of secretly-recorded tapes before deposition); *Robertson*, 1999 WL 199093, at *2 (exercising discretion to order that secretly-recorded tapes be produced before any depositions of the taped witnesses); *Giladi*, 1998 WL 183874, at *1 (holding that secretly recorded tapes, including ones with plaintiff's statements, had value beyond impeachment). In this context, the federal rules will not allow plaintiff to hide the ball.

**IV.    Plaintiff's Motion to Compel Defendant to Respond to Discovery**

Plaintiff challenges the sufficiency of the responses of many of defendants' responses to her discovery requests.  The Court addresses each seriatim.

**Interrogatory ("Int.") Nos. 7, 9, 10, and 11 and RFP nos. 4, 6, and 8:**

These requests seek information and documents related to accident reports, incident reports, injury reports, statements, investigative reports, and any other communications, writings and/or reports, related to decedent's casualty. They also request information and documents related to any root cause analysis or similar analysis with respect to decedent's casualty.

After responing, defendant withheld:

(1)    two personal accident/illness forms (both dated 8/15/17);
(2)    incident report (dated 8/15/17);
(3)    worksheets and lessons learned related to the casualty (both dated 8/15/17);
(4)    operational risk assessment (undated);
(5)    information discharge report (undated);
(6)    statement of Stephen Gros (dated 8/15/17);
(7)    statement of Autry Dufrene, Jr. for the U.S. Coast Guard (dated 9/1/17);
(8)    statement of Jerry LeBlue for the U.S. Coast Guard (dated 9/6/17); and
(9)    accident investigation safety meeting report (undated).

Defendant is amenable to producing (7) and (8) given that they were prepared for a government agency.  The motion is thus moot as to these two requests. That leaves (1)-(6) and (9), to which defendant maintains its work-product privilege objection given its argument that the materials were prepared by Marcos Carlucci, an employee of Tug and Barge Solutions, in anticipation of litigation.[5] Plaintiff counters by maintaining that defendant prepared the materials

---

[5] Tug and Barge Solutions is a company that provides professional service in marine safety and casualty investigations.

in the ordinary course of business and that she has substantial need for the production of the documents as she cannot obtain them from more less intrusive sources.[6]

The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Conoco v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 117-18 (W.D. La. 1998). This doctrine protects from discovery documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators, in anticipation of litigation. *Id.* at 118; *see Hickman v. Taylor*, 329 U.S. 495 (1947). The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *Boh Bros.*, 191 F.R.D. at 117; *In Re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1995).

The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997) (citing *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982)). The threshold determination that the court must make is whether the documents sought to be protected were, in fact, prepared in anticipation of litigation or whether they were prepared in the ordinary course of business. *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Caremark, Inc. v. Affiliated Computer Sys., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000). The Fifth Circuit has indicated that a document is prepared in anticipation of litigation "as long as the

---

[6] Defendant also objected to the production of some of these documents on the ground that they constitute subsequent remedial measures. Because defendant has not briefed that issue, the Court does not address it.

primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981). To determine the primary motivation for the creation of a document, courts look to various factors, including, "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ. A. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000)). "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue. Nevertheless, involvement of an attorney is a highly relevant factor . . . making materials more likely to have been prepared in anticipation of litigation." *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000). In addition, "[t]he mere fact that a document is prepared when litigation is foreseeable does not mean the document was prepared in anticipation of litigation. . . ." *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 19 F.3d 1432, 1994 WL 58999, at *3 (6th Cir. 1994) (citing *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). Thus, "[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Global Oil Tools*, 2013 WL 1344622, at * 6 (citing *S. Scrap Mat'l Co. v. Fleming*, No. Civ. A. 01–2554, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003); *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at *1 (E.D. La. Aug, 11, 2000)).

Here, defendant had not retained current counsel at the time of Carlucci's report, and Carlucci contacted no attorney nor does it appear that he worked at the direction of any attorney. This weighs against a finding that the work-product privilege applies here. In addition, it is a routine practice in the maritime industry to prepare reports and to take statements, etc. after any accident. In *St. James Stevedoring Co. Inc. v. Femco Mach. Co.*, 473 F.R.D. 431, 433-34 (E.D. La. 1997), the court cited with approval *Spaulding v. Denton*, 68 F.R.D. 342 (D. Del. 1975), in which the court held that the motivating factor behind a defendant's investigation after an accident was to "find out everything possible, as soon as possible, after the accident." *St. James*, 431 F.R.D. at 433-34 (citing *Spaulding*, 68 F.R.D. at 346). The *Spaulding* court concluded that while the insurer knew at the time when it had hired the marine surveyors that "there would be some sort of claim," until more was learned about the accident, "litigation was only a possibility. Indeed, acquisition of such knowledge would appear to have been the purpose of the first two [marine surveyor] reports." 68 F.R.D. at 346. And while defendant here argues that the severity of the accident meant only one thing – *i.e.*, that litigation would follow – that does not defeat that maritime companies routinely prepare these reports immediately following an accident, anticipated litigation or not. *See Carroll v. Praxair, Inc.*, No. 2:05CV00307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006) (citing *Binks Mfg. Co. v. Nat'l Presto Indus.*, Inc., 709 F.2d 1109, 1119 (7th Cir. 1983) ("If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery.")). The Court finds that defendant has not met its burden

to demonstrate that the documents created by Carlucci would not have been created in the ordinary course of investigating this or a similar accident.

Moreover, given that Tug and Barge Services is a company that provides professional service in marine safety and casualty investigations, the Court has no information as to whether defendant utilizes the company routinely when it has a need for an accident investigation. *Piatowski*, 2000 WL 1145825, at *3. In addition, defendant admitted that much of Carlucci's investigation was to prepare the reports for the Coast Guard, to determine the cause of the casualty, and to determine any post-accident remedial measures. This belies defendant's arguments that the sole purpose of Carlucci's investigation was in anticipation of litigation. Simply put, the information provided to the Court does not satisfy defendant's burden of demonstrating that the primary motivating purpose in securing the witness statements and manufacturing the reports was in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim. *See Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420, 423 (S.D.N.Y. 1981).[7]

**RFP Nos. 17, 18, and 19:**

These RFPs seek a complete copy of Autry Dufrene, Jr.'s, Steven Gros', and Jerry LeBlue's personnel files. Plaintiff argues that these files are relevant to the extent that they contain

---

[7] Plaintiff recently filed a Motion to Compel Tug and Barge Solutions, L.L.C. to Respond to Subpoena Duces Tecum and for Contempt [Doc. 52], in which she reinforces these arguments by noting Carlucci's inconsistent statements as to, *inter alia*, who engaged him to conduct the investigation, why he conducted the investigation, and to whom he disclosed the documents related to the investigation. Because the Court has ruled in plaintiff's favor on this issue, this motion is also granted in part for the reasons outlined in this section.

any certifications, licenses and/or training received and/or obtained by these individuals, any performance evaluations, any training and orientation forms, any company policies and procedures, any employment forms, any employment applications, any work status reports, any history of employment, termination, and reprimands, and any drug tests. Plaintiff maintains that any documents that may have personal (such as social security numbers, bank account numbers, etc.) or medical information can be redacted by defendant prior to production.

While defendant argues that personnel files of non-party employees are irrelevant (except, perhaps, in discrimination lawsuits), defendant has provided to plaintiff's counsel a list of the contents of the personnel files that are available to demonstrate that the files do not contain any relevant or particularly noteworthy documents. Defendant maintains that if the plaintiff can identify the excerpts from the personnel files that she wants, and she can demonstrate that they are relevant, American Tugs will *consider* producing such records.

Defendant's solution is no more than a subtle begging of the question: This Court has no doubt that even were plaintiff to identify the excerpts that she wants from the personnel files, defendant would still dispute their relevance, and this may lead to further motion practice. Accordingly, the Court resolves this dispute here.

In the premiere case on personnel file production in this jurisdiction, the Fifth Circuit held in *Coughlin* that the district court was incorrect in restricting discovery of personnel files. *Coughlin v. Lee*, 946 F.2d 1152, 1155-57 (5th Cir.1991). The plaintiffs in *Coughlin* were former deputy sheriffs who claimed that they were wrongfully discharged. *Id.* The deputies argued that the cited reason for their discharge was pretextual and sought discovery of personnel files within the

department to show that other employees who had committed similar infractions had not been dismissed. The Fifth Circuit found that the district court had failed to weigh the competing privacy and discovery interests at issue, and then ordered the district court on remand to consider the ten factors outlined in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). *Coughlin*, 946 F.2d at 1160.

*Frankenhauser*, a lawsuit under 42 U.S.C. § 1983, arose from the fatal shooting of an unarmed man following an encounter and chase in a Philadelphia dyeworks. *Frankenhauser*, 59 F.R.D. at 339-40. The plaintiffs sought discovery of the defendants' investigation materials relating to the decedent, and the government asserted executive privilege. The *Frankenhauser* court held that "when the executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data. . . . " *Id.* at 344. The court then enumerated ten factors, six of which are relevant in a civil case against a private defendant such as this one: (1) "the impact upon persons who have given information of having their identities disclosed;" (2) "whether the information sought is factual data or evaluative summary;" (3) "whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;" (4) whether the plaintiff's suit is non-frivolous and brought in good faith;" (5) "whether the information sought is available through other discovery or from other sources; and" (6) "the importance of the information sought to the plaintiff's case." *Id.* The court emphasized the importance of particularity, calling for a "case to case" balancing of the variables before the court.

Courts in the Eastern District of Louisiana continue to adhere to *Coughlin* and its reference to *Frankenhauser* for cases involving personnel files. "*Coughlin* and its subsequent progeny make clear that in resolving disputes regarding personnel files, the court is required to balance the competing interests of the parties in a considered manner, with regard for the breadth of the federal discovery rules." *George v. Entergy Servs., Inc.*, Civ. A. No. 09-3676, 2010 WL 3802452, at *4 (E.D. La. Sept. 17, 2010); *see also Eckstein Marine Serv., Inc. v. M/V Basin Price, Basin Offshore, Inc.*, 168 F.R.D. 38, 40 (W.D. La. 2009) (allowing discovery of a personnel file after *in camera* review and noting that "the proper approach in deciding whether personnel files should be disclosed is to balance the respective interests of the parties"). Privacy interests are not to be weighed lightly in this equation; this Court has noted that the personnel files of non-party employees present "special concerns" about the privacy rights of the individuals involved. *See Poseidon Oil Pipeline Co., L.L.C. v. Transocean Sedco Forex, Inc.*, Civ. A. No. 00-760, 2002 WL 1919797, at *4 (E.D. La. Aug. 20, 2002); *see also Fieldwood Energy, L.L.C. v. Diamons Servs. Corp.*, Civ. A. No. 14-650, 2015 WL 1415501, at *1 (E.D. La. Mar. 27, 2015) (quoting same). Therefore, a court ruling on the discoverability of the personnel files of non-party employees must balance privacy and discovery interests as informed by *Frankenhauser* and must give appropriate weight to the "special concerns" presented by personnel files in each case. *Poseidon Oil*, 2002 WL 1919797, at *4.

Such personnel files have a specific discovery test in the Fifth Circuit for a reason: They are special. *See Poseidon Oil*, 2002 WL 1919797, at *4. The privacy concerns implicated by a personnel file are distinct from those presented by a custodial file, because they are far more likely

to contain personal, sensitive material. *See Williams v. Roy O. Martin Lumber Co. L.L.C.*, 51 Fed. Appx. 483, 2002 WL 31319337 at *6 (5th Cir. 2002) (noting that "alimony and child support garnishment, tax records, and drug test results" may be found in a personnel file). Personnel files also present thorny issues of corporate policy; many files in a personnel file are not intended to be shared with an employee or disclosed outside of the company. A deponent-employee may be embarrassed or upset by the production of a critical performance evaluation or self-evaluation, and allowing personnel records to be per se discoverable following a generalized showing of "rush to the market" conditions or a need for evidence of bias would eviscerate any semblance of protection afforded to employee privacy interests. *Cf. In re Sunrise Secs. Litig.*, 130 F.R.D. 560, 580 (E.D. Pa. 1989) ("Strong public policy exists against disclosure of the personnel records . . . because disclosure would invade [the] employees' privacy, and firms might cease to frankly criticize and rate their own [employees'] performance.").

Courts applying *Coughlin* outside of the context of a discrimination suit have also restricted discovery of personnel files to situations where the personnel files were highly relevant to the theory of the case and the request was particularized. For instance, in *Eckstein Marine Serv., Inc. v. Anglo Am. Ins. Co., Ltd.*, 168 F.R.D. 38, 39-40 (W.D. La. 1996), the court allowed for the discovery of a personnel file in a vessel collision case. The plaintiff in *Eckstein* sought evidence of the employer-defendant's knowledge of drug use by the employee-captain. *Id.* at 39. The plaintiff's theory of negligence partially hinged on the boat captain's marijuana intoxication at the time of the accident, and the plaintiff provided a failed drug test by the captain in the wake of the accident to support that theory. *Id.* at 39. The personnel file at issue was highly relevant and

particularized to one critical witness, and consequently, the interest in discovery outweighed the defendant's privacy interest in his personnel file.

This Court has weighed the *Frankenhauser* factors and finds that most of them weigh in favor of plaintiff here. Moreover, the situation in *Eckstein* is similar to that here: Plaintiff's theory of the case revolves around, *inter alia*, accusations of a drug culture at American Tugs and the failure to conduct drug tests after the accident. Moreover, plaintiff has requested the files with particularity: She seeks any certifications, licenses and/or training received and/or obtained by these individuals, any performance evaluations, any training and orientation forms, any company policies and procedures, any employment forms, any employment applications, any work status reports, any history of employment, termination, and reprimands, and any drug tests. Defendant shall therefore review the three personnel files and produce the foregoing information to plaintiffs. Defendant shall also redact all personal identifying information and any irrelevant medical information[8] from the documents. ***Moreover***, the parties shall meet **no later than fourteen (14) days from the date of this Order** to confect a mutually-agreeable protective order that will prevent the dissemination of any of this material to the public outside the context of this litigation.

**Int. No. 18 and RFP No. 30:**

These requests seek documents related to defendant's excess insurers. Defendant has produced to plaintiff its P&I policy that provides coverage up to $1 million. While the parties dispute whether plaintiff's damages may exceed $1 million, the Court finds these requests

---

[8] Given plaintiff's allegations, medical documentation related to drugs and/or drug tests, and the like are relevant here.

premature at this time and not proportional to the needs of this case. Should further discovery reveal the necessity of this information, the Court will consider this issue at a later date.

## V.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Quash and for Protective Order [Doc. #12] and the Plaintiff's Motion to Compel Defendant to Respond to Discovery [Doc. #18] are GRANTED IN PART and DENIED IN PART as outlined above.

**IT IS FURTHER ORDERED** that the Motion to Compel Production of Recorded Phone Calls [Doc. #13] is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Tug and Barge Solutions, L.L.C. to Respond to Subpoena Duces Tecum and for Contempt [Doc. #52] is GRANTED IN PART for the reasons expressed on pages 13-17 *supra*.

**IT IS FURTHER ORDERED** that the submission date on Plaintiff's Motion to Compel Tug and Barge Solutions, L.L.C. to Respond to Subpoena Duces Tecum and for Contempt [Doc. #52] is CANCELLED but that for Plaintiff's Second Motion to Compel Defendant to Respond to Discovery and for Sanctions [Doc. #51] remained in place on the briefs on December 5, 2018.

The Court denies all requests for sanctions and attorneys' fees at this time.

New Orleans, Louisiana, this 10th day of December, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**